UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:14-CR-83 |
| | ) | |
| RICKY ANTHONY LANIER and | ) | |
| KATRINA RESHINA LANIER | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court to consider the defendants' joint motion to issue a subpoena to Juror 11 for certain text message and internet browser history, [Doc. 335]. The government responded in opposition, [Doc. 338], and the matter is now ripe for review. For the reasons stated herein, the defendants' motion, [Doc. 335], is **DENIED**.

I. FACTS

Pursuant to the Sixth Circuit's instructions on remand, [Doc. 307], this Court held a *Remmer* hearing on January 11, 2018 to determine if any extraneous influence on the jury led to bias or prejudice against the defendants and impacted the jury's verdict. *See Remmer v. United States*, 347 U.S. 227, 229-30 (1954). The Sixth Circuit determined that a *Remmer* hearing was necessary because, during the final day of deliberations, the Court became aware that Juror 11 placed a phone call to her personal friend Assistant District Attorney Teresa Nelson ("ADA Nelson"). ADA Nelson contacted the Court to report this call, which the undersigned communicated to the parties on the record. [Doc. 212, pgs. 3-5]. ADA Nelson reported that Juror 11 called and mentioned that there was "a problem with the deliberations." [*Id*. at 3]. ADA Nelson stated that she advised Juror 11 that they could not discuss the case, and that Juror 11 should

contact the Judge with any problems, and ended the conversation without discussing the case. [*Id.*]. The Sixth Circuit remanded the case for a *Remmer* hearing, directing that the parties should have the opportunity to question ADA Nelson, Juror 11, and the rest of the jury "to determine whether any external influence affected the jury's deliberations." [Doc. 307].

In addition to the subpoenas issued to compel the appearance of the jurors at the *Remmer* hearing, each juror received an Order Regarding Attendance of Jurors from this Court, which included the following language:

> 2. Although the Court recognizes that you may have questions about this subpoena and Order, you must not discuss your jury service or this case with any other person between now and the date of the forthcoming hearing on January 11, 2018.
> 3. In addition, you must not contact (i) any other jurors who may have served with you in this case, or (ii) any other individual who has knowledge about the case.
> 4. Similarly, you must not conduct any research into this case or seek out any information about this case or the defendants. This prohibition against research includes searching the internet or attempting to obtain information about the case through any other means. If you are exposed to any news articles or other information about this case or the defendants, you should not read or view such information.

[Doc. 322]. During the *Remmer* proceedings, the parties had the opportunity to examine each juror and ADA Nelson. Counsel questioned each juror regarding his or her knowledge of any outside influence during deliberations. Juror 11 was questioned in more detail regarding the phone call that she placed to ADA Nelson.

During examination of ADA Nelson, she reported that Juror 11 had sent her a text message on Sunday, January 7, 2018, in which Juror 11 included the case name and citation, and the phrase "Remmer Hearing," and asked: "Does any of that lead you to know what in the world this is about two years later?" [Doc. 333, pg. 88]. Juror 11 was examined later in the proceedings about this text message. When asked by defense counsel whether she reached out to ADA Nelson to ask

2

what the upcoming hearing was about, she responded, "No, I did not say that." [*Id*.]. When confronted with the text of her communication, she stated the she did not recall saying that. [*Id*. at 88-89]. Juror 11 testified that she lost the court paperwork temporarily, and searched "Greeneville federal court" in her web browser to find the court calendar to ensure she had the correct date and time for the hearing. [*Id*. at 78-80]. She testified that she had not done any other research on the case, neither during the 2015 trial nor in relation to the *Remmer* hearing. [*Id*. at 49, 79].

## II.    ANALYSIS

It is well established that trial court judges are granted "considerable discretion in determining the amount of inquiry necessary, if any, in response to allegations of jury misconduct." *United States v. Logan*, 250 F.3d 350, 378 (6th Cir. 2001). As a general rule, however, federal courts are reluctant to allow post-trial contact with discharged jurors. "Proper functioning of the jury system requires that jurors be free of post-trial inquisition and harassment." *United States v. Dye*, 508 F.2d 1226, 1232 (6th Cir. 1974) (finding that post-trial contact by a juror concerning the verdict was "not of sufficient gravity to impair the verdict of the jury or to justify further inquiry." (citing *Stein v. New York*, 346 U.S. 156, 178 (1953))); *Haeberle v. Texas Intern. Airlines*, 739 F.2d 1019, 1021 (5th Cir. 1984) ("Prohibiting post-verdict interviews protects the jury from an effort to find grounds for post-verdict charges of misconduct, reduces the 'chances and temptations' for tampering with the jury, increases the certainty of civil trials, and spares the district courts time-consuming and futile proceedings." (citing *O'Rear v. Fruehauf Corp*., 554 F.2d 1304, 1310 n.4 (5th Cir. 1977))). In determining when to allow post-verdict jury contact, courts have balanced the interests set forth by the parties against the jurors' privacy interests, as well as the public interest in well-administered justice. *Id.*

Further, while authority regarding the issuance of post-trial subpoenas on jurors is limited, the available authority seems to indicate that courts are unwilling to allow such action absent a strong showing of necessity. For instance, the Fifth Circuit Court of Appeals found that the trial court properly denied defendant's request to subpoena jurors after the trial when there were "no claims that these jurors had demonstrated or admitted to any prejudice against appellant or his attorney," and when "both the defendant and the government has an ample opportunity to present their contentions." *United States v. Johnston* 685 F.2d 934, 941 (5th Cir. 1982); *see also Polymer Dynamics, Inc. v. Bayer Corp.*, 2007 WL 2343796 at *3-4 (E.D. Pa. Aug. 1, 2017), *vacated in part on other grounds*, 341 Fed. App'x 771 (3rd Cir. 2009) (granting motion to quash a subpoena delivered to a juror post-trial because there had been "no proof of illegality."). Similarly, in *Honken v. United States*, a trial court concluded that the movant was not entitled to further interview a juror regarding external influence and bias when the "existing record regarding [the juror] is already extensive," and the "testimony already elicited from the jurors is sufficient to resolve the movant's … claim." *Honken v. United States*, 2011 WL 4527573 at *12 (N.D. Iowa Sept. 28, 2011); *United States v. Eagle*, 539 F.2d 1166, 1170-71 (8th Cir. 1976) (holding that the trial court properly denied a motion to subpoena jurors when there was no contention that the juror in question voiced the potential extraneous influence in the jury room, and "alleged no overt acts susceptible to the other jurors' knowledge.").

The defendants seek production of Juror 11's web browser search history between December 27, 2017 and January 11, 2018, and all text messages sent or received between January 3, 2018 and January 11, 2018 containing certain search terms. [Doc. 335-1]. The defendants also request "[a]ll text messages on any phone or device that you regularly use for communication purposes sent to or received from ADA Nelson," which, the Court notes, is outside of the scope of

what they requested at the *Remmer* hearing. [Doc. 333, pgs. 96-102]. The defendants claim that the issuance of such a subpoena is necessary to determine whether Juror 11 violated the Court's Order Regarding Attendance of Jurors for the January 11, 2018 hearing, and the determine "the extent to which Juror 11 committed perjury at the *Remmer* hearing." [Doc. 335]. In support of these requests, defendants state:

> These topics are directly relevant to the subject of the *Remmer* hearing ordered by the Sixth Circuit, as "the [defendants'] opportunity to question Juror 11 … to determine whether any external influence affected the jury's deliberations" may have been materially limited by Juror 11's outside research and perjury. Moreover, evidence from the subpoena's return that Juror 11 researched subjects in contravention of the clear instructions of this Court would again, in the context of her perjury, tend to demonstrate that her contact with ADA Nelson during the trial was but one of many ways in which she defied her oath as a juror, thereby rendering a new trial necessary.

[Doc. 335].

The Court is not persuaded by the defendants' argument that a subpoena for Juror 11's text messages and browser history is necessary, for multiple reasons. First, there is no evidence that Juror 11 did any substantial research based on the testimony in the *Remmer* hearing. It is clear that on Sunday, January 7, 2018 at 7:50 pm, Juror 11 texted ADA Nelson to ask her about the upcoming *Remmer* hearing. When ADA Nelson did not respond, Juror 11 texted again about the "Federal Case" on Monday, January 8, or thereafter. Juror 11's second text indicates that she did not learn anything regarding the *Remmer* hearing from any other source that would have answered the question she sent to ADA Nelson on January 7. ADA Nelson never responded to Juror 11. There is no evidence that Juror 11 did any research outside of checking the Greeneville court calendar online, which she admitted to doing the Saturday or Sunday before the hearing.

The oral statements of Mr. Lanier's counsel at the conclusion of the January 11 hearing underscore the speculative nature of the defendants' request. Counsel argued that the information

sought by the subpoena "goes to [Juror 11's] credibility' and that "**[p]erhaps** she had done something to violate the Court's order and was concerned about that and that's why she reached out to Ms. Nelson … she **may** have done something outside the Court's order, like **perhaps** researching." [Doc. 333, pgs. 100-101] (emphasis added). Counsel continued: "The fear we have is **if** she has done research, **maybe** she's found the court opinion, she's got the word *Remmer* in the text message. **If** she googles *Remmer*, well, she can find out, gosh, it's about extraneous influence, I need to say these things because I don't want to get in trouble." [*Id.* at 101].

Second, it is doubtful that such a "fishing" expedition is "directly relevant to the subject of the *Remmer* hearing," which is whether extraneous influence affected the jury's verdict. Any information gleaned from the requested subpoena can only shed light on Juror 11's post-trial conduct and credibility, both of which were adequately explored during the *Remmer* hearing, and neither of which can establish extraneous influence on the jury's deliberations. The proposition that Juror 11's conduct two years following the trial "tend[s] to demonstrate" anything at all about her conduct during the trial itself is merely speculative. Even if the subpoena reveals that Juror 11 researched the case during the weeks before the *Remmer* hearing, this does little to show that she made other outside contacts during the trial in December of 2015. At best, this information provides cumulative insight into Juror 11's credibility for truthfulness, which the Court has adequate testimony to consider.

Finally, the Court is not convinced that Juror 11 perjured herself, as the defendants' claim. Initially, the act of perjury generally requires an element of scienter. *See* 18 U.S.C. § 1621 ("Whoever, having taken an oath before a competent tribunal … *willfully* and contrary to such oath states or subscribes any material matter which he *does not believe* to be true … is guilty of perjury[.]") (emphasis added); *Perjury*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("[t]he act or

an instance of a person's *deliberately* making false or misleading statements while under oath; esp. the *willful* utterance of untruthful testimony under oath or affirmation[.]") (emphasis added).

In this case, it is not clear that Juror 11's misstatement regarding her text message to ADA Nelson was intentional. In fact, when confronted with the text message, Juror 11 stated: "Sorry, I didn't recall I said that." [Doc. 333, pg. 88]. She further explained that she did not believe that she had committed any "violation" of the Court's order, because she "wasn't asking [anything] specific about their case or what happened." [*Id*. at 90]. It is unclear, then, that Juror 11 made a deliberate or willfully false statement on the record at the *Remmer* hearing. Even if her original statement regarding her text to ADA Nelson was made with an intent to deceive, Juror 11 corrected her statement in the same proceeding. *See* 18 U.S.C. § 1623(d) (Prosecution for perjury is barred where, "in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false," and "the declaration has not substantially affected the proceeding."). Because Juror 11 quickly corrected her statement, her declaration did not substantially affect the proceeding. For these reasons, it is not at all clear that Juror 11 perjured herself, something the defendants assume.

In summation, it is unlikely from the evidence and testimony presented that Juror 11 conducted outside research on the nature of the *Remmer* hearing. Any contention that she has done so is purely speculative, and would only serve as cumulative propensity evidence to Juror 11's credibility. Even if she had researched the case in these past weeks, this information does nothing to aid the defendants in carrying their ultimate burden of showing that external influence resulted in jury bias that impaired the verdict in this case. If Juror 11 "defied her oath as a juror," this would not, without more to show extraneous influence and bias, "render[ ] a new trial necessary," as the defendants claim. [Doc. 335]. The jurors in this case have already been examined post-

verdict, something courts are not often willing to do. Juror 11, in particular, was subjected to extensive scrutiny, some of which arguably rose to the level of "inquisition and harassment." *United States v. Dye*, 508 F.2d 1226, 1232 (6th Cir. 1974).[1]

The defendants have not shown that the issuance of this subpoena is necessary, or even particularly relevant to their claim of extraneous influence on the jury verdict, nor that it outweighs the juror's privacy interest in her personal communications and search history.

## III. CONCLUSION

For the reasons stated above, the defendants' joint motion to issue a subpoena to Juror 11, [Doc. 335], is **DENIED**. To the extent that the defendants' wish to file any memoranda with their ultimate arguments pertaining the *Remmer* hearing, they are **ORDERED** to do so within seven (7) days of the date of this order. The government's filing in opposition of the issuance of a subpoena, [Doc. 338], appears to make the ultimate argument that the defendants' convictions should be reinstated. However, if the government wishes to respond to the defendants' memoranda, it should do so within seven (7) days of defendants' filing.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

---

[1] In fact, contrary to the Court's preliminary instructions against badgering the witnesses, defense counsel persisted in questioning Juror 11 regarding the content of her text message, even in spite of the Court's continued warnings. *See* Doc. 333, pg. 89 ("Q. In that text message did you ask what you need to do to prepare? The Court: Mr. Little, this thing speaks for itself. Mr. Little: I'd like to ask her – The Court: I can read it. Move on, please. I can read this. Q. You didn't ask those question; correct? The Court: I can read it. Move on.").