UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:14-CR-83 |
| | ) | |
| RICKY ANTHONY LANIER and | ) | |
| KATRINA RESHINA LANIER | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court to consider defendants' Joint Motion to Stay Proceedings and Notice of Filing with the Sixth Circuit Court of Appeals. [Doc. 403]. Attached to their motion, defendants provide their Joint Petition for Writ of Mandamus to Compel Disqualification, or, in the Alternative, Motion to Reassign Case, filed with the Sixth Circuit on July 27, 2018. [Doc. 403-1]. Defendants argue that "if the Court were to take further action while the petition remains pending before the Sixth Circuit, Defendants will be prejudiced in the event that the Sixth Circuit subsequently finds disqualification appropriate." [Doc. 403 at 3]. The government filed a response in opposition, arguing that the defendants' tactics of attempting to broaden the scope of this Court's inquiry into the jury deliberations at defendants' 2015 trial, making unsupported allegations and unseemly insinuations, misrepresenting Court directives, and using inflammatory language "should not be rewarded with more delay." [Doc. 405]. Defendants filed a reply, arguing for the first time that the factors the Court should consider when granting a stay in fact weigh in their favor. [Doc. 406]. For the reasons stated herein, defendants' joint motion to stay proceedings, [Doc. 403], is **DENIED**.

I.     **FACTUAL BACKGROUND**

On May 24, 2018, defendants filed a joint motion to disqualify the undersigned from presiding further over this case. [Doc. 387]. Contemporaneously with their motion for recusal, defendants filed a Joint Motion for Appointment of New Expert and to Reconsider Fee Order. [Doc. 389]. The Court set a hearing on defendants' motion for disqualification, stating that no other pending motions would be addressed until after the resolution of defendants' motion for recusal. [Doc. 390]. A hearing was held on June 26, 2018 on the defendants' disqualification motion. On July 17, 2018, the Court published three Orders. The Court denied defendants' joint motion for disqualification, finding that "no reasonable, objective person, aware of all the circumstances, would question the impartiality of the undersigned." [Doc. 396 at 25]. The Court denied defendants' motion to appoint a new expert, and ordered the defendants to deposit the additional amount owed for the payment of Mr. Derek Johnson's invoice. [Doc. 397 at 6]. Finally, the Court granted defendants' Motion to Reconsider Portion of Order Regarding Cell Phone and Computer Search, [Doc. 382], and set a hearing on August 17, 2018, at which time "the Court will fully reconsider its Order setting parameters for the forensic search of Juror 11's laptop computer[,]" [Doc. 398], giving the defendants a full opportunity to question Derek Johnson, the Court-appointed expert for the purpose of forensically examining Juror 11's computer, about the parameters for the examination proposed by the defendants, and to offer any proof they will offer.

The defendants deposited the additional amount for payment of the remainder of Mr. Johnson's invoice on July 18, 2018, and the Court subsequently entered an Order releasing the forensic report and supplemental flash drives to the parties. [Doc. 400]. The Court also stated that the hearing on defendants' motion to reconsider "will also serve as an opportunity for the parties to examine Mr. Johnson about his forensic examination and report." [*Id.*]. The Order continued that "[i]t is the intent of the Court that the August 17 hearing be the final evidentiary hearing in

this matter unless the Court orders further forensic examination of Juror 11's laptop computer." [*Id.*]. On July 27, 2018, defendants filed their motion to stay and notice of appellate filing, [Doc. 403]. Following the government's response, [Doc. 405], and the defendants' reply, [Doc. 406], both filed on August 1, 2018, this matter is now ripe for review.

## II.    STANDARD OF REVIEW

When determining whether a stay should be issued pending appeal pursuant to Federal Rule of Appellate Procedure 8(a), a trial court should apply "the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *Family Trust Found. of Ky., Inc. v. Ky. Judicial Conduct Comm'n*, 388 F.3d 224, 227 (6th Cir. 2004). Those factors are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Giepentrog*, 945 F.2d at 153 (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)). Rather than prerequisites that must be met before granting a stay, these factors represent "interrelated considerations that must be balanced together." *Id.*

The Sixth Circuit has recognized that in the case of a motion for a stay pending appeal, the district court has fully considered the merits of the underlying action and issued judgment, and therefore, a movant seeking a stay will have greater difficulty establishing a likelihood of success on the merits of their appeal. *Id.*

> "To justify granting a stay, however, a movant need not always establish a high probability of success on the merits. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. *Id.* Simply stated, more of one excuses less of the other.

3

> This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere 'possibility' of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'"

*Id.* at 153-54 (citations omitted). Earlier Sixth Circuit precedent suggests that, rather than demonstrating the likelihood of success on the merits, it would be enough for a movant to raise "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (quoting *Brandeis Machinery & Supply Co. v. Barber-Greene Co.*, 503 F.2d 503, 505 (6th Cir. 1974)). "The apparent disparity in the wording of the standard merely reflects the circumstance that no single factor is determinative as to the appropriateness of equitable relief." *Id.* (quoting *Metro. Detroit Plumbing & Mech. Contracts Ass'n v. Dep't of Health, Educ. and Welfare*, 418 F. Supp. 585, 586 (E.D. Mich. 1976)).

In demonstrating irreparable harm, a movant must allege harm that is both certain and immediate, rather than speculative or theoretical. *Griepentrog*, 945 F.2d at 154.

> The key word is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

A district court generally has broad discretion to stay proceedings "as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254) (1936)).

**III. ANALYSIS**

4

To assist the Court in adequately balancing the factors listed above, "the party seeking a stay must address each of the factors regardless of its strength," and provide sufficient facts upon which the Court can make a determination. *Ohio ex. rel. Celebrezze*, 812 F.2d at 290. Defendants' initial brief requesting a stay did not include an analysis of the factors the Court must consider, but simply stated, in conclusory fashion, that they "will be prejudiced in the event that the Sixth Circuit subsequently finds disqualification appropriate," and that "a short stay pending a ruling from the Sixth Circuit will harm neither the government nor anyone else." [Doc. 403]. It was only in their reply brief that the defendants discussed the four factors that should be considered by the Court, arguing that "should the Court be inclined to apply the factors applied in the unpublished opinions from the Eastern District of Michigan, those factors weigh in favor of staying the matter[.]" [Doc. 406 at 3].[1] The government argues that no factor in the standard for granting a stay pending appeal weighs in favor of the defendants, and deems defendants' arguments "frivolous." [Doc. 405 at 2]. The Court will consider each factor in turn below.

### a. *Likelihood of Success on the Merits of Appeal*

Defendants' joint motion to stay proceedings does not address this issue. In their reply brief, to demonstrate the likelihood defendants will succeed on the merits of their appeal, they simply refer to the arguments "more fully stated in Defendants' prior filings[.]" [Doc. 406 at 2]. The government argues that because "no reasonable, objective person, knowing all of the

---

[1] Defendants state that "[a]lthough it does not serve as binding precedent that would require the Court to consider the same factors, the government has cited to a case from the United States District Court for the Eastern District of Michigan and argues that the Court 'may' consider the same factors in this matter." [Doc. 406 at 1]. Presumably, defendants dispute that the four balancing factors traditionally applied to the consideration of a preliminary injunction represents the proper standard for this Court's review. However, the Sixth Circuit Court of Appeals has indeed held that a district court should apply the same factors traditionally considered in evaluating a motion for a preliminary injunction when considering a motion for a stay pending appeal. *See Griepentrog*, 945 F.2d at 153; *infra* at pages 3-4.

5

circumstances, would question this Court's impartiality, defendants are unlikely to prevail on the merits of their petition." [Doc. 405 at 2].

As discussed above, a movant may not always have to demonstrate a high likelihood of success on the merits of their appeal, so long as the party seeking a stay can raise serious questions as to the merits. *Giepentrog*, 945 F.2d at 154. For reasons fully explained in the Court's memorandum opinion and order denying defendants' second motion for disqualification, [Doc. 396], the Court disagrees that defendants can demonstrate "a high likelihood" of success on the merits of their petition. [Doc. 406 at 2]. The defendants do, however, raise the important issue of judicial bias, as well as claims of *ex parte* communication between the Court and various third parties. For that reason, serious questions are implicated for review by the Sixth Circuit.[2]

However, the Court agrees with the government that the defendants, rather than playing "a fair game," have sought to "upturn the game-board." [Doc. 405]. While the defendants' petition to the Sixth Circuit certainly implicates important issues, it does so by relying on misstatements of the record, inflammatory and conclusory language, and unsupported allegations. The Court will address these issues here.

*Misstatements of the Record*

Defendants state that, prior to the *Remmer* hearing, ADA Nelson "contacted the district judge, through his law clerk … just as she had done during trial deliberations." [Doc. 403-1 at 3-4]. The defendants next claim that the judge "issued more directions" to ADA Nelson [*Id.* at 4],

---

[2] The Court does not agree that jurisdiction is proper because "the Sixth Circuit retain[ed] jurisdiction over th[e] case pending the district court's *Remmer* hearing," [Doc. 403 at 1, quoting *United States v. Lanier*, 8780 F.3d 546, 547 (6th Cir. 2017)]. This Court has not yet issued an ultimate opinion as to the *Remmer* hearing and the claim of extraneous influence on the jury deliberations, which was the issue on remand. The Sixth Circuit's retention of jurisdiction to review this Court's opinion on remand does not grant to the defendants inherent authority to petition the Sixth Circuit for relief from each individual Order by this Court. Defendants are correct, however, that the Sixth Circuit does have jurisdiction to "consider a petition for mandamus following a district court's denial of a motion to disqualify based on conflict of interest and appearance of partiality under 28 U.S.C. § 455[,]" based on its own precedent. *In re Aetna Casualty & Surety Co.*, 919 F.2d 1136, 1143 (6th Cir. 1990).

6

They claim that the undersigned "seemed to contradict ADA Nelson's testimony by stating that ADA Nelson was told 'to follow the court's order,'" when ADA Nelson testified that she was told "not to respond to Juror 11." [*Id.* at 12; n.3].

First, it is clear in the record that ADA Nelson did not contact the undersigned through his law clerk, but spoke with the courtroom deputy, testifying that "based on my conversation with her I did not respond to the text message." [Doc. 333 at 12]. The transcript from the hearing on defendants' most recent disqualification motion indicates that defense counsel understands that (1) ADA Nelson telephoned the courtroom deputy, (2) the courtroom deputy, after contacting chambers, communicated the undersigned's wishes that ADA Nelson follow the Court's Order by not responding to Juror 11:

> The Court: I went back and looked at the transcript, she said she called Kathy, who I presume is the Courtroom Deputy. You seem to assume in your motion that she talked directly to me.
>
> Mr. Little: Your honor, the testimony of [ADA Nelson] was that [the courtroom deputy] has gotten back to her after conferring with the Court.
>
> The Court: And told her to follow the Court's Order; right?
>
> Mr. Little: Told her not to communicate back with that individual.
>
> The Court: Well, that's to follow the Court's Order.
>
> Mr. Little: Yes; but the information that was conveyed to the Court … should have been necessary to have been disclosed to the parties. It was not.

[Doc. 401 at 13-14]. Defendant's claim that "Judge Greer seemed to contradict ADA Nelson's testimony" is factually incorrect and made in bad faith. The defendants also conflate the undersigned's "decision to allow the new information to be revealed at the hearing, rather than a few days prior," [Doc. 396 at 11] with active concealment. [Doc. 403-1 at 31].

7

Defendants further state that the Court's Order denying their second joint motion for disqualification "is inconsistent as to the court's communications with Mr. Johnson, at first describing in detail the potential substantive nature of their communications and later stating that 'most of Court's (or the Court's law clerk's) communication was merely about the procedural aspects of obtaining a forensic examination of Juror 11's computer." [Doc. 403-1 at 37-38]. What the defendants ignore is the remainder of the cited paragraph:

> The Court's initial contact with Mr. Johnson was to generally describe some of the background of the case and the task to be completed, determine his availability to timely complete the examination, determine his hourly rate for services rendered, and obtain an estimate of the total cost of the examination. Defendants were advised at the April 11 hearing of the Court's intent, and they were advised after the conversation of Mr. Johnson's availability, the Court's appointment, Mr. Johnson's hourly rate, and as estimate of the total cost of the examination. Defendants made no objection either at the April 11 hearing or upon receipt of the Court's Order. The Court's law clerk subsequently coordinated with Mr. Johnson and the United States Marshal Service concerning a date and time for Mr. Johns to take custody of the computer. ***These contacts with Mr. Johnson were not substantive in nature, did not concern the parameters of his examination, and were not improper. The only contacts between the Court or its law clerk [and Mr. Johnson] that could potentially be described as substantive, i.e. touching on the merits of the defendants' suggested search parameters, are described above at pages 6-7.***

[Doc. 396 at 15 (emphasis added)]. Whether defendants simply failed to fully read the Court's Order or sought to purposefully skew the record in an attempt to support their conclusion that "inconsistent descriptions of the *ex parte* contact" requires recusal, the result is the same: defendants substantively misstate the record in their petition.[3] [Doc. 403-1 at 26 n.6 ("The trial court's memorandum later describes the contact between the court, the court's clerk, and Mr.

---

[3] Defendants cite to the portion of the Court's Order in which the Court describes the potentially substantive communication between the Court's law clerk and the expert. [Doc. 403-1 at 25]. Before including the excerpt, the defendants state that "[b]esides communications the court classified as procedural and administrative issues, the court described the following communications, which it stated could be classified as 'potentially [] substantive.' (*Id.* at 15)," referring to the passage cited above. [*Id.*]. Because the defendants seem to understand the contents of the Court's Order, it appears more likely that the purpose of their insinuation about inconsistencies is to distort the record on appeal.

Johnson differently."); 37-38; 39 ("Here, we are left with the recollections of Judge Greer, the court's law clerk, and Mr. Johnson, which Judge Greer provided for the first time, in contradictory fashion, in his Order denying recusal.")].

Finally, the defendants state on multiple occasions that Judge Greer communicated with Mr. Johnson "both directly and through his law clerk." [*Id.* at 6; 20 ("Judge Greer and the court's law clerk consulted with Mr. Johnson about Defendants' motion…"); 37 ("Here, the district court … discussed [defendants'] motion several times with the witness…")]. These statements are also not supported by the record. The facts provided in this Court's memorandum opinion and order clearly describe all contacts with Mr. Johnson. The defendants themselves cite this section in their petition, which provides that all contact with Mr. Johnson, other than the initial contact retaining the expert, were between the court's law clerk and Mr. Johnson. [Doc. 396 at 6-7; 15]. There is no evidence in the record that the undersigned communicated with Mr. Johnson "directly," and indeed, did not do so other than to retain the expert.

### b. *Likelihood Movant Will Suffer Irreparable Harm*

Defendants argue that they will suffer irreparable harm should this Court deny their motion to stay proceedings. They argue that:

> "Here, if the Court were to take further action while the petition remains pending before the Sixth Circuit, Defendants will be prejudiced in the event that the Sixth Circuit subsequently finds disqualification appropriate. The Court has set a hearing to take place on August 17, 2018. Holding that hearing while the petition for a writ of mandamus requiring disqualification is pending would be improper and could require Defendants to question Mr. Derek Johnson about *ex parte* communications with the Court and its representatives, one of the central issues leading Defendants to argue that recusal is proper here."

[Doc. 403 at 3]. Their reply adds that "[d]efendants would suffer irreparable harm if a district judge whose impartiality should reasonably [be] questioned issues further rulings in their case." [Doc. 406 at 3]. The government argues that, "other than stating that they 'will be prejudiced' if

9

this Court proceeds to hearing on August 17, 2018, defendants offer no explanation as to how they will be 'irreparably harmed' by that hearing." [Doc. 405 at 2].

As discussed above, the irreparable harm alleged "should be evaluated in terms of its substantiality, the likelihood of its occurrence, and the proof provided by the movant." *Griepentrog*, 945 F.2d at 155 (citing *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 977 (D.C. Cir. 1985)). The Court finds that this factor weighs heavily against the defendants. First, defendants claim that the August 17, 2018 hearing *could* require defendants to question Mr. Johnson about *ex parte* communications, but do not otherwise state why this harms them. In fact, it is clear that the Court fully intended that the defendants question Mr. Johnson fully with respect to his communications with the Court or the Court's law clerk. Their argument fails to allege certain, immediate, or substantial harm, relying instead on a single speculation without any supporting analysis.

Further, any corrective relief on this issue will be available at a later date through direct appeal. Defendants have not attempted to show that the undersigned's recusal could not be properly handled on appeal following this Court's final determination regarding the *Remmer* hearing. In their petition to the Sixth Circuit, defendants argue that a writ is appropriate because defendants "have no other legal recourse to obtain recusal." [Doc. 403-1 at 2]. This is inaccurate.

Neither do the defendants otherwise attempt to show irreparable harm by proceeding with the hearing on August 17, 2018. In fact, holding a hearing while the Sixth Circuit considers the defendants' emergency petition to compel disqualification will create a clearer record for appellate review on any *ex parte* communications that occurred between Mr. Johnson and the Court's law clerk.

### c. Likelihood Others Will Suffer Harm

The defendants argue that "waiting what will likely be a few weeks for a ruling from the Sixth Circuit on this significant issue will harm neither the government nor anyone else." [Doc. 406 at 3]. The government does not address this factor, but does emphasize that defendant's request would result in "more delay." [Doc. 405 at 2]. This matter on remand has certainly encountered delay after delay; however, the government has not submitted a particular reason why they would suffer harm if a stay was granted. Therefore, although principles of judicial efficiency certainly weigh in favor of continuing with the proceedings and resolving this case, no substantial harm would result if defendants' motion for a stay is granted.

### d. Public Interest

Defendants' reply brief argues that the public has a "significant interest" in the stay being granted: "Should a judge whose impartiality is at issue in a pending petition go on to make further rulings in a matter while such petition is pending, it would harm the public's view of the judiciary and of the availability of fair and full consideration of matters before it." [Doc. 406 at 3]. The government argues that the public interest in resolving this matter weighs in favor of denying defendants' motion. [Doc. 405 at 2].

The Court is not persuaded by defendants' argument on this point. While the public certainly has an interest in the proper functioning of a fair judiciary, the mechanisms which protect litigants from bias are already in place through recusal statutes and the right to appeal, avenues which defendants have already pursued. *See Family Trust Found. of Ky., Inc. v. Ky. Judicial Conduct Comm'n*, 388 F.3d 224, 228 (6th Cir. 2004) (finding public interest was not advanced by a petition for injunction claiming appearance of impartiality when "narrowly tailored mechanisms existed under Kentucky law to preserve the impartiality of the judiciary – namely Kentucky's judicial recusal statute."). Defendants' argument would render a stay automatic in any proceeding

11

in which a movant sought appellate review of the denial of a motion for disqualification. This posture is not supported by the weight of authority on this issue, which requires the balancing of factors.

The public does, however, have a well-founded interest in the speedy resolution of disputes, especially in criminal cases. *In re Lott*, 139 F. App'x 658, 662-63 (6th Cir. 2005) (finding "the public interest in resolving this question" was an "important interest"); *Ford v. Fed.-Mogul Corp.*, 2015 WL 110340 at *10 (E.D. Mich. Jan. 7, 2015) (stating that a settlement agreement "serves the public interest in judicial economy and in resolving disputes in federal courts with expediency and efficiency[.]"). This case has already turned what should have been a rather quick inquiry into possible external influence on the jury into protracted litigation over a forensic examination of Juror 11's computer, an inquiry that is only remotely relevant on the issue of Juror 11's credibility and deals with a period of time far removed from the actual trial.

Therefore, the Court finds that this factor weighs against granting a stay, particularly considering the extensive nature of the delay that has already occurred in this matter.

## IV. CONCLUSION

The Court is persuaded that while the defendants raise important questions as to the merits of their petition, they do so through various misstatements of the record and this Court's Orders. Perhaps most detrimental to their claim that a stay is necessary, however, is that the defendants can demonstrate no irreparable harm if the stay is not granted. While granting a stay will not harm the government or others, it will cause continued to delay, which is not in the interest of the public. Balancing these factors together, the Court finds that the defendants have not demonstrated that a stay is necessary or appropriate. For the reasons stated herein, defendants' joint motion to stay proceedings, [Doc. 403], is **DENIED**.

This Court is also in receipt of the defendants' notice that the flash drives containing supplemental materials to Mr. Johnson's forensic report appeared to be blank. [Doc. 402]. Before the drives were distributed to the parties, the Court, through its IT staff, verified that the intended files were indeed present on the drives, although very large. The parties may not possess the appropriate software or means to access the files. Therefore, if the parties are so inclined, they may jointly contact the law clerk assigned to this case to schedule a conference call with Mr. Johnson to receive instructions from him on accessing to the drives. In part because of this technical issue, the August 17, 2018 hearing is **CONTINUED** until September 14, 2018 at 10:00 a.m.

So ordered.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE