UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:14CR83 |
| | ) | |
| RICKY LANIER and | ) | |
| KATRINA LANIER | ) | |

MEMORANDUM OPINION AND ORDER

During the trial of this fraud case, on the last day of jury deliberations, Juror 11, while on her way to the courthouse that morning, placed a phone call to a social acquaintance, Assistant District Attorney General Teresa Nelson (ADA Nelson). ADA Nelson reported the call to the Court and informed the Court of the subject matter of Juror 11's inquiry and ADA Nelson's response. The Court informed the parties of the contact and the conversation with Nelson, but did not interview Juror 11 or any other of the jurors before a verdict was returned. The Court later denied the motion of the defendants to interview the jurors post-verdict. Because the Court did not properly investigate the possibility of external influence on the jury, the Sixth Circuit vacated the convictions and remanded the case to this Court for the purpose of conducting a hearing pursuant to *Remmer v. United States*, 347 U.S. 227 (1954) "where attorneys for each side should have the opportunity to question Juror 11 and the rest of the jury to determine whether any external influence affected the jury's deliberations. Attorneys for each side should also have the opportunity to question Nelson about her conversations with Juror 11." *United States v. Lanier*, 870 F.3d 546, 551 (6th Cir. 2017).

The Court scheduled the required *Remmer* hearing for January 11, 2018, and ordered all

twelve jurors, as well as ADA Nelson, to appear and testify. [Docs. 321, 322]. These orders were drafted by the parties and submitted to the Court for entry. In the order authorizing a subpoena for ADA Nelson, she was ordered to "not discuss the case with any other person" between the service of the order and January 11, 2018, and "not conduct any research into this case or seek out information about the case or the defendants." [Doc. 321 at 2]. The order authorizing subpoenas for each of the twelve jurors was similar. Jurors were ordered "not [to] discuss your jury service on this case with any other person" before the hearing and "not conduct any research into this case or seek out any information about this case or the defendants," including "searching the internet or attempting to obtain information about the case through any other means." [Doc. 322 at 2].

All twelve jurors appeared as ordered for the hearing. After hearing testimony from ADA Nelson and Juror 11, the Court heard testimony from the jury's foreperson, Juror 7, followed by testimony from Jurors 1-4, 6, 8-10, 12, and 5, in that order. The foreperson, responding to questions from defendants' counsel, testified that there was no mention of the defendants' race during deliberations, [Doc. 380 at 16], that deliberations were "very intense," and that no mention was made by any juror of seeing anything on the internet or anything that indicated any juror had information from any source outside the trial. According to Juror 7, no juror engaged in any behavior during deliberations suggesting that a juror had talked about the case with anyone else. [*Id*. at 19]. Juror 7 did report some frustration on her part, and among the other jurors, about a male juror, Juror 5, who expressed on the first day of deliberations that he had a vacation scheduled and wanted deliberations to continue until his vacation and then seemed to delay the deliberations by not engaging in reasonable discussion with the other jurors. [*Id*. at 19-20, 24].[1] According to the foreperson, Juror 11 was proactive during deliberations in finding relevant documentary exhibits

---

[1] Juror 7 said, about this juror, that he was "driving her crazy."

introduced at trial for discussion but never said anything about doing any research on her own about the case or talking to anybody about the case. [*Id*. at 24]. Other jurors testified consistently that none had done any research or investigation on their own or talked to anyone else about the case during the trial or deliberations, nor was any aware of anything indicating that another juror had done so. Some followed the case to learn the Court's decision on sentencing; others did not. Except for a casual encounter, no juror reported seeing or talking to any other juror since the trial. *See generally* [Doc.380].

ADA Nelson testified that she became acquainted with Juror 11 when their daughters, who "refer to each other as best friends," were in the fourth grade. [Doc. 333 (Transcript of January 11 hearing) at 5]. On the morning of December 18, 2015, ADA Nelson received a phone call from Juror 11, sometime between 7 and 8 a.m. [*Id*. at 19-20]. The conversation was a short one. Juror 11 said she was serving on a jury, there was "an issue or something, and she didn't know what to do." ADA Nelson interrupted her and said "immediately. . . you can't discuss this with me," and told her to talk to a court officer. [*Id*. at 20-21]. Juror 11 was using a "normal tone. She wasn't crying. She didn't seem to be upset." [*Id*. at 24]. ADA Nelson then contacted the undersigned's office fairly soon after she arrived at work that morning. [*Id*. at 27]. Juror 11 did not tell ADA Nelson "about the facts and circumstances of this case in terms of who was involved," [*id*. at 30], and she had no further contact with Juror 11. [*Id*. at 34]. Juror 11 did not "discuss the deliberations with [her]," [*id*. at 35], and ADA Nelson did not offer any advice to Juror 11. [*Id*. at 39-40], other than "to tell her to convey any issue to the Court. [*Id*. at 39].

ADA Nelson also testified that she had received a text message from Juror 11 on "Sunday or Monday" prior to the January 11 hearing. [*Id*. at 12]. The text message was from "E\_\_\_'s mom, Text message, Sunday, 7:50 p.m." and read, in full

> Hope you and K_____ are much better . . . I have a Question for you . . . the Federal case I was a juror on two years ago . . . I have received a summons to report to Gville this Thursday. When I looked online this is what was listed. 2:14CR83 (JRG-LF)REMMER hearing-Ricky Lanier ETAL . . . does any of that lead you to know what in the world this is about 2 years later[2] []? Thanks!

[Ex. 2, January 11 hearing]. [3] ADA Nelson responded the next day, but not to the question about the Court's calendar and the possible meaning of the entry, leading Juror 11 to respond: "Thanks! . . . did you see the 2nd part of my original text on the Federal case?" [Ex. 3, January 11 hearing]. ADA Nelson did not respond to this text, did not receive any phone call from Juror 11 after that, and did not see her or have further contact with her prior to the hearing. [*Id*. at 6, 7-8].

Juror 11 testified at the January hearing that she did not "at any time go on the internet to look up any details about [the] case," [*id*. at 49], does not have any social media accounts, except for a rarely used Twitter account, [*id*. at 50], may have expressed her frustration about the length of time required for trial and the time away from family and business to her husband, but not "details of the case or anything." [*Id.* at 52]. Juror 11 testified that she "did call a friend of [hers](ADA Nelson) on the way here one, one time and expressed [her] concern over the length of it and how stressed [she] was." [*Id*. at 53]. Juror 11 shared no details of the trial "since or then" and did not tell ADA Nelson anything about deliberations. [*Id*. at 55]. Juror 11 never reported the phone call to any of the other jurors and the call never came up in discussions "in any way," [*id*. at 56], and she never was provided "with any sort of advice or input about the trial or about [] jury deliberations" during the course of the trial. [*Id*. at 59]. In response to questions from the Court, Juror 11 testified that she did not do any kind of research or investigation about the case on her own, and did not discuss the case with anyone during trial or deliberations. [*Id*. at 60]. She further

---

[2] Emoji deleted.

[3] The Court's public calendar for January 11, 2018, confirms that this is the exact entry that appears on the calendar. *See* [Ex. 5, January 11 hearing].

stated that she did not allow anyone to discuss the case with her during the trial or during deliberations, and did not "have access or gain access to any information about the issues in this trial, the parties in the trial, during the trial from any source other than the courtroom." [*Id*. at 60-61].

Juror 11 testified that she read the court order attached to the subpoena for her appearance at the January 11 hearing "shortly after she received it . . . in October or sometime." [*Id*. at 57]. Juror 11 "did . . . abide by that order to not talk to anybody . . . other than letting my workers and family know that I had to go back." When asked if she had tried to contact anybody else about the hearing, she answered: "Not to my memory, no." [*Id*. at 58]. After ADA Nelson was released to retrieve her cell phone and screen shots of the text message exchange obtained, Juror 11 was recalled for additional testimony. [*Id*. at 74]. She testified, consistently with ADA Nelson, *see* [*id*. at 13], that she and ADA Nelson had last seen each other on the previous Thursday night at "8th grade night," but they had not talked because ADA Nelson had the flu. She acknowledged that she had "texted [ADA Nelson] over the weekend to see if she, her older daughter were both sick with the flu and to see if they were okay." [*Id*. at 77-78]. When asked if she had "any other communications . . . with Ms. Nelson" over the last two weeks prior to the January 11 hearing, she responded:

> A. I did because I couldn't remember—I couldn't find my papers or anything. I did go online to just the, the court to see what time we were supposed to be here, what day and that: and I sent her the little initials and stuff to see if that meant anything to her, that, you know, I was supposed to have or anything because I didn't find the, I couldn't find the paperwork; but she didn't respond to that, and I took it, because it was on the back end of I hope you are okay, and in my business, you all probably are well aware too, when you send e-mails or texts to people, they usually answer the first thing, they don't read all the way through. So I didn't take much to it, other than she didn't see it.

[*Id*. at 78].

Juror 11 stated that she had googled "Greeneville Federal Court" and came up with the Court's website "to see what day I was supposed to be there and what time." [*Id*. at 79]. She testified that she reached out to ADA Nelson "[j]ust because she's an attorney" and she thought "she might know what those initials meant if I needed to know anything prior to, you know being here." [*Id*. at 81]. Juror 11 testified that she had not previously done an internet search on the case and did not see a news article in the *Knoxville News-Sentinel*, [*Id*. at 79-80]. She testified that she used her office laptop, which she had in her car, to go to the Court's website. [*Id*. at 87]. Juror 11 stated that she did not "reach out to Ms. Nelson and say, hey, what in the heck is this about" and did not "ask Ms. Nelson . . . what's this about, what am I doing here, why do I need to be here?" [*Id*. at 87-88]. When shown the text message, which she read out loud, she said she didn't recall she had said that. [*Id*. at 88]. Juror 11 acknowledged following up with ADA Nelson by text when she did not respond to the second part of the message, [*Id*. at 89]. When shown a copy of the Court's calendar entry for January 11, 2018, from the Court's public website, [Ex. 5, January 11 hearing], Juror 11 identified it as what she had looked at except that "it's been updated since I looked at it because I think it said 9:00, now it says 9:30."[4]

After Juror 11 was excused from the courtroom briefly, defendants' counsel requested a subpoena to Juror 11's employer for the "web history of her computer within the past seven days." Counsel immediately changed the oral request to "get the web history from her computer for the past two weeks to be able to corroborate or to contradict her testimony as to what internet research she did in the past week." [Doc. 333 at 96-97]. Defendants also requested "text messages for seven days." [*Id.* at 98]. Based on that request, the Court had Juror 11 return to the courtroom and

---

[4] The docket sheet for this case shows a time change from 9 to 9:30 entered on January 10, 2018.

instructed her to "preserve" all text messages for the seven days prior to the hearing and her "web history" for the prior two weeks. [*Id*. at 102]. Defendants were instructed to "file a written motion setting out specifically why you think that is relevant." [*Id.* at 101].

On January 16, 2018, the defendants filed their "Joint Motion For Permission To Issue Subpoena," [Doc. 335], for the production by Juror 11 of "certain text messages and web browsing history." [*Id*. at 1]. Defendants claimed production of the text messages and browsing history was necessary for two reasons: 1) "to determine the extent to which Juror 11 . . . viewed any material that may have affected or conditioned her testimony at the *Remmer* hearing," and 2) "to determine the extent to which Juror 11 committed perjury at the *Remmer* hearing." [*Id*.]. According to defendants, "Juror 11 has shown a remarkable willingness to perjure herself" and "cannot be trusted to tell the truth." [*Id*. at 2]. Attached to the motion was a proposed subpoena for the production of

1. All web browser history for all internet browsers on any electronic device that you regularly use to browse or search the internet from December 27, 2017 through January 11, 2018, wherever found on your devices.

2. All text messages on any phone or device that you regularly use for communication purposes sent to or received from ADA Nelson.

3. All text messages on any phone or device that you regularly use for communication purposes sent or received between January 3, 2018 and January 11, 2018, sent to or received from any person, that contain any of the following words, whether in whole or in part:
   a. Lanier
   b. Court
   c. Hearing
   d. Remmer
   e. Federal
   f. Juror.
   g. Jury
   h. Judge
   i. Teresa
   j. Nelson

4. Any information or data that shows any information or data responsive to Request through 3 has been deleted or otherwise removed from any such device between

7

December 27, 2017 to the present.

[Doc. 335-1].

The United States responded in opposition to the subpoena request, [Doc. 338], taking issue with the defendants' assertion that Juror 11 had committed perjury and arguing that "there is no evidence in the record that Juror 11 has lied or would lie about anything." [*Id*. at 1]. The government referred to defendants' request as a "gratuitous fishing expedition" in view of the fact that "[n]o evidence of any outside influence was elicited from any juror," and "needlessly compromises the privacy of a federal juror." [*Id*. at 1, 2, 7]. The Court denied the motion on January 26, finding that defendants had not established the necessity for the issuance of the subpoena, noting, among other things, that Juror 11 had checked the Court's online calendar for the time of the hearing and sent a text to ADA Nelson asking if she might know what the hearing was about, both of which she admitted to, that most of the defendants' arguments were speculative in nature, that the requests were not directly relevant to the question of extraneous influence on the jury since evidence that Juror 11 researched the case during the two weeks before the *Remmer* hearing was only remotely relevant to the question of whether she did so during trial or deliberations, and, finally, that the Court was not persuaded that Juror 11 had perjured herself at the *Remmer* hearing. [Doc. 340].

Defendants did not seek reconsideration of the Court's order. Rather, on January 31, 2018, the defendants filed an "Emergency Joint Motion To Compel Issuance Of Subpoena Or, In The Alternative, Petition For Writ Of Mandamus," in the Sixth Circuit, [Doc. 341-1], and attached it to their motion in this Court to reset the deadline for the filing of post-*Remmer* hearing briefs. [Doc. 341]. Upon review of the motion, the Court, noting that the defendants had raised issues in the Sixth Circuit filing that had not been raised in this Court, namely, that the information sought could be "written over by the operating system", and, "if . . . not obtained soon, it may become impossible

to do so," [Doc. 341-1 at 175], ordered Juror 11 to continue to preserve her text messages and web browser history for the relevant dates and appear at the United States District Court Clerk's office on February 16, 2018 at 10:00 a.m. and "produce any cell phone or laptop computer that she accessed between the dates of December 27, 2017, and January 11, 2018." [*See* Docs. 345, 346]. Juror 11 appeared as ordered and a member of the Court's IT staff took possession of the computer and cell phone.[5] The cell phone, an older Samsung, [Doc. 384 (*Transcript of April 11 Hearing*) at 5], was examined "to determine whether or not there were text messages for the period January 4, 2011[sic] on the cell phone" or browser history "for the period December 27 through January 11." [*Id*. at 5-6].

Text messaging on the phone had a search feature and it was searched using each of the words listed in defendants' subpoena request. Since the phone was an older cellphone, capture of that information was possible only by scrolling through the text messages and taking an image (screen shot) for each scroll. After the images were obtained, they were transferred to a USB drive. [*Id*. at 6-7]. Browser history for the relevant dates was also found and stored on the same thumb drive. [*Id*. at 7].[6] There was only one messaging application on the cellphone, [*id*. at 14], and the only browser history on the phone was the Google browser. The thumb drive was maintained under seal by the Clerk of the Court pending the resolution by the Sixth Circuit of defendants' emergency joint motion.

On February 15, 2018, the Sixth Circuit denied defendants' emergency motion and petition for writ of mandamus. The Sixth Circuit's order was provided to the Court on February 22, 2018, as an attachment to "Defendants' Joint Motion For Access to Juror Information," [Doc. 348]. The

---

[5] David Belcher, the IT staff member, is not a forensic examiner and, since 2008, has been the Network Administrator for the Bankruptcy and District Courts in the Court's Northeastern Division. During his career, he has "dealt with a lot of mobile devices . . . laptops and cell phones aren't strange to [him]." [Doc. 384 at 5, 10].

[6] The Court notes that defendants did not ask for browser history from the phone in their oral request on January 11.

9

Sixth Circuit declined to decide whether "the Laniers' motion . . . satisfied the requirements for an emergency order or writ of mandamus" because "[i]n the interim, the district court has ordered that Juror 11 produce *all of the information*[7] requested in the Laniers' proposed subpoena". . . . Thus, the danger that this evidence would be permanently lost has apparently been averted." [Doc. 348-1 at 2-3] (emphasis added). The Sixth Circuit noted, that, while the district court has considerable discretion about how to investigate the Laniers' claims, "[e]vidence that Juror 11 failed to comply with the district court's order prior to the *Remmer* hearing, conducted prohibited outside research, and then testified untruthfully about her actions would be particularly probative of determining the credibility of her testimony that she did not conduct herself similarly during the trial itself, and thus whether external influence affected the jury's deliberations." [*Id.* at 3].

On February 22, 2018, defendants jointly moved "for information about and access to the information retrieved from Juror 11's electronic devices." [Doc. 348]. The United States did not oppose the motion, [Doc. 350]. The Court granted the motion and scheduled a hearing for April 11, 2018, for the purpose of allowing "defendants and the government . . . an opportunity to review the information obtained from Juror 11's devices . . ." and to hear testimony from the Court's IT staff member who retrieved the data. [Doc. 351]. On April 4, 2018, defendants filed a "Joint Emergency Motion For Seizure And Forensic Imaging Of Juror 11's Computer" [Doc. 357].[8] The motion was supported by the affidavit of James KempVanEe, a certified forensic examiner, who has worked in the field since 1999. [Doc. 357-1]. According to KempVanEe, deleted files may sometimes be recovered using forensic tools and it is important to examine the subject computer as

---

[7] The Court interpreted this to mean that the Sixth Circuit believed, as this Court did, that preserving copies of relevant text messages and all browser history was the universe of information requested by the defendants.

[8] This motion was precipitated by the Court's notice to the parties on April 3 that the Court's IT staff had not been able to retrieve any browser history from Juror 11's laptop computer.

soon as possible. [*Id*.]. This motion made no reference to Juror 11's cellphone.[9]

On April 11, 2018, David Belcher, the Network Administrator for the Bankruptcy and District Courts,[10] testified as to what he had done to retrieve information from Juror 11's phone and computer on February 16, 2018. *See generally* [Doc. 384]. As noted above, Belcher located and copied to a thumb drive all of the phone's browser history from December 27, 2017, through January 11, 2018, and all text messages sent or received between January 3, 2018, and January 11, 2018, that contained any of the terms set forth by defendants in their earlier subpoena request. Defendants and the government were provided with hard copies of the screen shots of the browser history and the text messages, although these were not made part of the record at the time. Paper copies of the screen shots from the cellphone and laptop computer are attached to this order. Although the texts indicated the name of the person associated with the texts, Belcher was not asked to, and consequently did not, search for contact information on the phone associated with the names. [Doc. 384 at 12]. Belcher retrieved all text messages from the only messaging application on the cellphone and all browser history from the Google browser, the only browser on the phone. [*Id*. at 14].[11]

The browser history for the relevant dates was fairly extensive. The internet sites visited varied from pier1.com (December 27), to Dicks' sporting goods (December 28), to billygraham.org., overstock.com., Sperry shoes, and the *Bristol Herald-Courier* newspaper[12]

---

[9] Since this order deals only with Juror 11's cellphone, defendants' motion will not be further discussed in this order. Issues related to the forensic evaluation of the computer will be addressed in a separate order.

[10] Belcher is not a forensic examiner and was not asked to conduct a forensic examination of the cellphone. Defendants had not yet requested such an examination.

[11] Belcher looked for other browsers, but the only browser present was the Google browser. Screenshots of the phone home pages confirm that only one internet browser was present on the phone. *See* [Attachment, hard copies of screen shots, at 1-7].

[12] The specific newspaper article accessed on December 29 dealt with the search for a missing child by the Bristol police.

(December 29), to Twitter (January 1, 6, 7, & 8), to allrecipes.com. (January 2), to Nordstroms department store and hayneedle.com, (January 3), to Amedisys home health (January 4), to dotandbo (a home furnishings and décor website) (January 5), to hobbylobby.com, dotandbo, hayneedle, and REI.com (January 5-6), to zillow.com. and the *New York Times* (January 8), to the *Bristol Herald-Courier*[13] and Lamar Advertising (January 10), and to booking.com for New York hotels and billygraham.com (January 11). *See* [Attachment, hard copies of screen shots].

The word search of the text messages resulted in far fewer documents for the one week period between January 3 and January 11, 2018. The text at issue in the January 11 hearing, quoted above, was found on the phone, having a date of January 7, 2018, at 7:42 p.m. *See* [Attachment at 33]. ADA Nelson's response was on January 8, 2018, at 1:24 p.m. and Juror 11 and ADA Nelson continued with these texts, mostly about each having been ill, until Juror 11 sent a last text on that date which read: "Thanks! . . . did you see the 2nd part of my original text on the Federal case." ADA Nelson did not respond to this text. [*Id*. at 34-35]. This text exchange is the only relevant message for the relevant time period which contained any of the search terms. Only a handful of other texts contained any of the search terms. On January 9, Juror 11 received a text message from Jackie at Taco Johns, and the subsequent text messages make it clear that Taco Johns is an advertising client of Juror 11's employer, and Juror 11 simply advised the client on January 11 that she "was in Greeneville all day on Federal **Court** duty. [*Id*. at 42]. There was a text from L.D. about finding a **Court**yard by Marriott, [*id.* at 40], a text exchange between Juror 11 and her daughter which clearly involves a basketball game with references to **court** and **hearing**, [*id*. at 40, 43], a text from "Kristen" ("enjoyed **hearing** your voice"), and a text from "Shannon" ("hate **hearing** your sick"). [*Id*. at 43].

---

[13] The article viewed was about the report of over 900 local flu cases.

On April 13, 2018, the defendants filed a supplement, [Doc. 367], to their previously filed joint emergency motion for seizure and forensic imaging of Juror 11's laptop computer, [Doc. 357]. Defendants claimed the seizure and forensic examination of Juror 11's cellphone was necessary because the Court's IT staff member "was not an expert with relevant experience, did not record the contacts with whom text messages were exchanged, did not ensure that the searches he conducted captured all relevant messages. . . and does not appear to have taken screenshots of the actual text messages of some of the conversations that hit on the search terms." [*Id*. at 3]. Defendants also made the argument that "search history appears to have been deleted from . . . the cell phone that Juror 11 brought to the courthouse on February 16 . . . ." [*Id*.]. This was the first request made by defendants for contact information from the cell phone or for any kind of forensic examination of the phone. The United States responded in opposition to the defendants' supplemental request. [Doc. 371]. The government argued that defendants' request "is not justified by the evidence obtained by the Court's IT staff from Juror 11's cell phone on February 16, 2018." [*Id*. at 1]. The government noted that the discovery of the January 7 and 8 text messages on the cellphone produced by Juror 11 confirmed that the phone was the one used to communicate with ADA Nelson and that the browser history indicated that none of Juror 11's internet history related to this case. Furthermore, the government took issue with the defendants' claim that browser history was deleted from the phone. [*Id*. at 1-2]. On April 17, 2018, the Court granted the motion as to the laptop computer but not as to the cellphone. [Doc. 374].

On April 19, the defendants submitted, as requested by the Court, their parameters for the search of Juror 11's computer and cellphone. [Doc. 375]. Defendants proposed a broad-ranging search of Juror 11's devices, seeking, among other things, documentation of all operating systems running on or previously run on the devices, when they were installed, created, modified, and last

executed, all user profiles installed or used on the devices and when they were created modified or accessed, all cellular or wi-fi networks accessed and when they were accessed, all web browsers, any online accounts associated with the web browsers, the presence of data-erasing software and dates of installation, modification or execution, all web-browsing history, including the name and uniform resource locator (URL), all files and downloaded files related to internet locations or web pages accessed, when internet locations or web pages, downloaded and cache files were created or accessed, which users accessed the internet locations or web pages, all web browser history, downloaded files or cache files deleted by the user or otherwise and when it was deleted, all applications capable of sending and receiving short messages, such as Facebook messenger, group chat applications, SMS, and MMS, and telephone numbers associated with any message string and date and time sent and received. [*Id*.]. The submitted parameters were not limited in any way by subject matter or time frame and the defendants made no effort to show the relevance of any of the specific information sought or in any way justify the request as anything other than a giant "fishing expedition." The United States did not object to the defendants' proposal, [Doc.376].

On April 26, 2018, the Court denied defendants' supplemental request for a forensic examination of Juror 11's cell phone. [Doc. 377]. The Court found that defendants had misstated the testimony from the April 11 hearing,[14] that the defendants' supplemental request sought material, such as contact information, that had not been previously requested, that, contrary to defendants' assertions, "there is no evidence in the record to suggest that the data retrieved from

---

[14] This was not the only example of defendants' counsel's lack of candor, misstating or mischaracterizing the record in the case, of using inflammatory and conclusory language without citation to the record, or of making unsupported allegations. For instance, at the April 11, 2018 hearing, when counsel for Mr. Lanier orally moved to amend the motion for forensic examination of the laptop computer, he orally sought "metadata" associated with the text messages, cell phones associated with the messages, and the numbers associated with the messages. When asked whether he had asked "for all of that in your subpoena request" counsel answered, "Absolutely, your Honor." [Doc. 384 at 22; *see also* Doc. 407]. A review of the subpoena itself shows this assertion by counsel to be untrue.

14

Juror 11's cell phone is in any way deficient or incomplete." In other words, defendants had made no showing that any further examination of Juror 11's cell phone was necessary to provide them with a "meaningful opportunity" to investigate and litigate their claim. The Court concluded that defendants had fallen short of showing that their request was necessary to justify such a broad invasion of Juror 11's cell phone. [*Id*.].[15] On May 5, 2018, defendants filed a motion for reconsideration. [Doc.382]. The motion challenged the Court's conclusions and argued that the Court "did not provide any analysis or explanation for its determination the proposal was improper other than asserting that defendants did not 'supply [any] parameters for this search' and that such an examination would be 'overly broad and inefficient.'" This motion was supported by developed argument and the affidavit of James KempVanEe. KempVanEe opined that the procedure used by the Court's IT staff member "was inadequate for any forensic purpose[16] or for determining if data, including internet history and/or searches, had been deleted." [Doc. 382-1 at ¶ 4]. A large portion of the affidavit is concerned with the recovery of deleted data such as web browser history and text messages and the procedures used for a forensic examination of cellphones. No reason was ever offered by the defendants as to why they did not support their previous motion with proper analysis, citations to the record, or the KempVanEe affidavit. The United States did not respond to the

---

[15] At a later hearing, Mr. Little, counsel for Ricky Lanier, suggested that this order appeared to rely on "technical knowledge" gained from *ex parte* communications with the court-appointed expert. When asked by the Court to specifically identify what language in the order suggested that the Court "relied upon technical knowledge that the Court would not [otherwise] have," Mr. Little evaded the question. *See* [Doc. 401, *Transcript of June 26, 2018 hearing*, at 6-7]. Defendants, through counsel, also stated to the Court that the record showed text messages to have been deleted from Juror 11's cellphone, an unfounded allegation.

[16] When Belcher took possession of the phone from Juror 11 on February 16, 2018, the subpoena request was not for the production of the cell phone itself, but for certain items stored on the phone. The subpoena clearly did not request a forensic examination of the phone nor was one ever requested by defendants until their supplemental motion on April 26, 2018. Furthermore, the Court made it clear that the purpose of the Court's order of February 8, 2018, was to preserve the text messages and web history, not for a forensic examination of the cellphone. [Doc. 346]. Although defendants complain that they were not consulted by the Court before entry of the order, they never asked the Court to reconsider, nor did they suggest anything beyond the measures employed by the Court to preserve the text messages and internet history until the filing of their motion in April.

motion to reconsider.

The Court took no action on the motion to reconsider because, on May 24, 2018, the defendants filed a joint motion to disqualify the undersigned. [Doc. 387]. The Court held a hearing on the motion on June 26 and denied the motion to disqualify on July 17. [Doc. 396]. On the same day, the Court denied, admittedly without proper explanation and analysis, the motion to reconsider as it pertained to the cell phone. [Doc. 398]. The defendants then filed a "Joint Petition For Writ Of Mandamus To Compel Disqualification Or, In The Alternative, Motion To Reassign Case" in the Sixth Circuit" on July 27, 2018, [Doc. 403-1], and a motion to stay proceedings in this Court, [Doc. 483]. Other than to deny the motion to stay and continuing a scheduled hearing, [Doc. 407], the Court took no further substantive action in the case while the joint petition was pending in the Sixth Circuit. On September 6, the Sixth Circuit denied the petition for writ of mandamus. [Doc. 409]. In its opinion, however, the Sixth Circuit appeared to be harshly critical of this Court's handling of the cell phone issue. The Court found "troubling" this Court's "den[ying] the defendants an **adequate** search of Juror 11's cellphone **without an adequate explanation**." [*Id.* at 5] (emphasis added). The panel referred to the "haphazardness[17] of the process" by which the Court's IT staff searched Juror 11's cellphone and noted that the district court denied the request without explanation about why it rejected "the defendants' concerns that the process by which the IT staff member had taken screenshots of Juror 11's cellphone did not capture all the relevant data," referring to the Court's orders of April 26 and July 17. [*Id.* at 3]. The Sixth Circuit stated in a footnote that the work done by the Court's IT staff "produced static images that contain none of the

---

[17] It is unclear why the Sixth Circuit panel chose this word to describe what happened. Mr. Belcher was only asked by the Court to retrieve the text messages and browser history, using the search terms supplied by the defendants. It was never intended that he conduct a forensic examination of the cellphone, something he was not qualified to do. It is important to understand as well that, as of February 16, defendants had requested nothing other than production of the text messages and browser history. Their request for a forensic evaluation came much later, in mid-April.

16

underlying metadata" and, by way of example, that "if the search produced a message from Juror 11 to a person listed as 'Teresa' and the staff member took a screenshot that shows both the message and the recipient in the same image, there is no way for the parties to determine what phone number is associated with the name 'Teresa.'" [*Id*. at 2 n.1].[18]

Now before the Court is the joint motion of the defendants for reconsideration of their motion for a forensic examination of Juror 11's cellphone, [Doc. 410], arguing, for the reasons previously argued in documents 367 and 382, "and for the reasons that the Sixth Circuit explained, that the examination to date of Juror 11's cellphone was 'inadequate.'" [*Id*. at 2]. The United States has responded that it "adamantly disagrees" with the argument of the defendants that the Court has denied them an adequate search of Juror 11's cellphone, but it nevertheless does not oppose defendants' motion "in order to help avoid continued delay and to satisfy the Sixth Circuit's suggestion." [Doc. 412].

These proceedings have moved far afield from the Court's instructions from the Sixth Circuit to permit the defendants to question the jurors in the case and for the Court to determine whether there was any external influence on the jury's deliberations, and, under ordinary circumstances, the Court would be inclined to deny defendants' motion. It is the Court's view that defendants have now had a "meaningful opportunity" to litigate and prove their claims. They have questioned Juror 11 and ADA Nelson under oath. They have examined all other jurors under oath as well. They have access to Juror 11's text messages and browser history from her cellphone, the initial object of their request. A forensic examination of Juror 11's laptop computer has been completed and defendants have been provided with the report, although the court-appointed expert

---

[18] The Court is a bit puzzled by this statement. The only text message recovered that was to or from "Teresa" was the chain of messages started by Juror 11's January 8 text. The identity of "Teresa" was not subject to any serious question. In any event, it is clear from all other text messages found using the words supplied by defendants to search that they had nothing to do with this case. The contact information for these persons is wholly irrelevant.

has not yet presented his report and testified about his findings because the Court granted defendants' motion to continue the scheduled hearing. Defendants point to nothing from the testimony of ADA Nelson or the jurors, from the text messages and browser history recovered, from the expert report, or any other source which reasonably suggests that any relevant information will be recovered through a forensic examination.

In short, defendants have turned up no evidence to date of any extraneous influence on the jury. At best, it has been shown that Juror 11 improperly reached out to ADA Nelson on the last day of deliberations in an unsuccessful attempt to talk about the case and that she exacerbated the problem created by accessing the court calendar and by reaching out, again unsuccessfully, to ADA Nelson before the *Remmer* hearing. Defendants initially did not seek the production or seizure of the cellphone itself and did not seek to immediately examine either the cellphone or Juror 11's computer, which she had in her possession on the date of the *Remmer* hearing. They also did not originally request a forensic examination of the cellphone, making that request only after the *Remmer* hearing, in mid-April. They now seek, among other things, contact information and deleted texts from Juror 11's cellphone, and they do so, not based on any evidence that relevant texts have been deleted from the cellphone by Juror 11, or a showing that contact information is relevant to the issue before the Court, but rather on mere suspicion or supposition.

Defendants ask the Court to order that Juror 11's cellphone, if it is still in her possession, be seized and a broad-ranging search of Juror 11's personal information that might be stored thereon. In the Court's view, before such an invasive inquiry into the privacy of a federal court juror should be sanctioned, defendants should at least be required to show some reasonable basis to believe that information relevant to the question before the Court will be found and that it is necessary to provide defendants with the required meaningful opportunity to prove their claim, *i.e.*, something other than

the oral explanation given by Mr. Lanier's attorney: "**Perhaps** she had done something to violate the court's order and was concerned about that and that's why she reached out to Ms. Nelson and Ms. Nelson may have stopped her from talking about it, but that still doesn't give evidence that she may have done something outside the court's order, like **perhaps** researching. . . . The fear we have is **if** she has done research, **maybe** she's found the court opinion, she's got the word Remmer in the text message. **If** she googles Remmer, well, she can find out, gosh, it's about extraneous influence, I need to say these things because I don't want to get in trouble." [Doc. 333 at 101]. Information about Juror 11's violation of the Court's order before the *Remmer* hearing is, as stated by the Sixth Circuit, probative of her credibility at the *Remmer* hearing. Yet, there must be some limits on the degree to which a defendant is allowed to make these kinds of invasive inquiries into a juror's personal information without first being required to make a reasonable showing that further inquiry should be made in the hope something will be found to substantiate defendants' claims. There is nothing in the browser history from the cellphone (and defendants do not really contest the testimony of Mr. Belcher that he recovered it all) to suggest that further search is necessary and there in nothing in the text messages recovered using the search terms suggested by the defendants that does so either.

On the other hand, the circumstances in this case are not ordinary. During the pendency of this case after remand from the Sixth Circuit, the case has made two additional trips to that court. Whether the Court agrees with the Sixth Circuit's statements or not is irrelevant; the Sixth Circuit has the final say and the Court acknowledges that and respects it. It certainly is a reasonable reading of the Sixth Circuit's September 6 order that the Sixth Circuit does not believe this Court has provided the defendants with an "adequate search" of Juror 11's cellphone, although it is also possible the Court simply requires a more adequate explanation from this Court. In light of these

concerns, it is hereby ORDERED that the defendants' motion to reconsider, [Doc. 410] is GRANTED, and the Court will hold a hearing on **November 15, 2018 at 9:30 a.m.** during which the defendants will have an opportunity to demonstrate that a forensic evaluation of the cell phone is necessary for them to have a meaningful opportunity to investigate their claim. The Court will also consider whether the search the defendants seek is forensically feasible. At this hearing, the Court will also fully reconsider the parameters of the forensic search of Juror 11's laptop computer to determine whether further forensic examination is necessary. [*See* Doc. 398]. Derek Johnson will be available to present the findings of his forensic report of Juror 11's laptop computer, and to provide testimony regarding the possibility of any further forensic examination. Mr. Johnson's costs will be split between the parties.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE